UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHAZ ALTMAN and
GINA GAFFKE,

      Plaintiffs,

      v.

P.O. KIRK HELGESEN, individually, and
the VILLAGE OF GURNEE,

      Defendants.

No. 10 CV 5619

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

A jury trial was held in this case from July 28 through July 30, 2014. The jury returned a verdict in favor of defendant Kirk Helgesen and against plaintiffs Chaz Altman and Gina Gaffke.[1] Plaintiffs now move for a new trial under Federal Rule of Civil Procedure 59. Dkt. 196. For the following reasons, plaintiffs' motion is denied.

**I.    Legal Standard**

Under Rule 59, the court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience." *Davis v. Wisconsin Department of Corrections*, 445 F.3d 971, 979 (7th

---

[1] The only claim against the Village of Gurnee was for the indemnification of defendant Helgesen, so the jury was not asked to pass upon its liability.

Cir. 2006). A jury's verdict is "contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore v. Tuleja*, 546 F.3d 423, 427 (7th Cir. 2008). When a motion for a new trial is predicated on a purported error of law, the moving party must show that the error was substantial enough to deny that party a fair trial. *See Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994); *Perry v. Larson*, 794 F.2d 279, 285 (7th Cir. 1986).

## II.     Background

On August 22, 2010, defendant Officer Kirk Helgesen shot plaintiff Chaz Altman three times while responding to a call at Altman's home. Altman survived the shooting but suffered serious injuries, including the loss of a leg. Altman sued Helgesen, alleging the officer used excessive force without justification in violation of 42 U.S.C. § 1983. Plaintiff Gina Gaffke, Altman's wife, sued Helgesen for loss of consortium. A jury trial was held from July 28 through July 30, 2014, and the jury found in favor of the defendant.

## III.    Analysis

Plaintiffs identify four categories of error requiring a new trial. They argue that (1) I erred in admitting portions of the deposition testimony of Officer Ben Munji, (2) Helgesen's testimony presented a factual scenario against the manifest weight of the evidence, (3) I erred in bifurcating liability and damages, and (4) several rulings on the parties' motions in limine deprived plaintiffs of a fair trial.

### A. Testimony of Officer Ben Munji

Officer Ben Munji witnessed the events leading up to and including Altman's shooting. At the time of the trial, Munji lived more than 100 miles away, so his testimony was given by deposition. Defendants designated the following portions of Munji's deposition transcript, which I admitted over plaintiffs' objection:

Q. At any point in time during this incident, were you on the verge of shooting Mr. Altman?

A. Yes, sir.

Q. At what point in time?

A. When he approached Officer Helgesen. The only reason that I didn't is that I actually had a cross fire with Officer Bertaud and Pugliesi.

Q. And why were you going to shoot?

A. Because he was a direct threat to Officer Helgesen[.]

Q. And just to spell it out for the record, how was he a threat to Officer Helgesen?

A. Well, the fact that he had a knife in his hand and that he was approaching aggressively, I believe that direct action - - his next direct action, if he had gotten any closer to Officer Helgesen, was to harm him with that knife[.]

Munji Dep. 61:13-62:5; Dkt. 182. This testimony was presented to the jury by plaintiffs' counsel.

Plaintiffs argue it was an error to admit this testimony because it amounted to irrelevant and prejudicial "expert opinion testimony regarding to [sic] the reasonableness of Officer Helgesen's actions," and served to "'rubber stamp' the shooting officer's actions . . . ." Dkt. 196 at 3.

I am not persuaded that my prior decision was in error. Munji's observations and decisions to act (or not act) in a certain way were relevant to the totality of the circumstances that the jury had to consider. That Munji was on the verge of shooting Altman and observed Altman to be a direct threat to Helgesen was not an expert opinion—it was an observation from a percipient witness. Likewise, Munji's testimony that he "had a cross fire" was an observation relating to why he did not shoot, and therefore relevant to the jury's consideration of the events that actually occurred as related by an eyewitness on the scene.[2]

Nevertheless, even if admitting this testimony was in error, plaintiffs fail to demonstrate that the error was so substantial it denied them a fair trial. *See Perry*, 794 F.2d at 285. First, the jury was instructed that it had to decide whether Helgesen's use of force was reasonable based on what Helgesen and not anyone else knew at the time. While plaintiffs question whether this instruction sufficed to "cure the prejudice," the law assumes that jurors do as instructed unless there is substantial evidence to the contrary. *United States v. Kibler*, 279 F.3d 511, 515 (7th Cir. 2002). "There is no reason here to believe that the jury did not heed that instruction." *Id*.

Second, any prejudice caused by Munji's testimony was offset by Officer David Bertaud's countervailing testimony that the only person he perceived Altman to threaten that night was Altman. I admitted this portion of Bertaud's testimony

---

[2] Tellingly, in the motion now under consideration, plaintiffs support their argument that the jury's verdict was against the manifest weight of the evidence by arguing: "Moreover, it should not be lost in all of this that despite the fact that Altman was closer to a number of other officers, no one else shot at him." Dkt. 196 at 7-8.

over defendants' objection for the same reason I permitted Munji's testimony. In both cases, the officers were testifying not to what they believed, but merely to what they perceived.

The admission of Munji's testimony does not merit a new trial.

### B. Helgesen's testimony

Plaintiffs argue Helgesen's testimony was "clearly a fabrication and therefore, there was no justifiable reason to use deadly force . . . and the jury's verdict is clearly contrary to the manifest weight of the evidence." Dkt. 196 at 7. Plaintiffs first find incredible Helgesen's testimony that he waited two-to-three seconds between his first and second shots, because other witnesses testified they heard three shots in quick succession, and because three casings were found together on the northeast edge of the property. *Id*. at 5-6. Second, plaintiffs argue that if Helgesen had "truly advanced into the yard and then fired the first shot shortly after backing into the driveway, then it certainly stands to reason that either Officers Pugliesi or Bertaud would have seen him . . . ." *Id*. at 6. Third, plaintiffs say Helgesen was not able to "account for the thorny issue of the bullet that entered through Altman's left wrist (the hand in which he was holding the knife) at an angle, exited through his arm, and then entered his abdomen at a similar angle," which all amounted to "*uncontested evidence* that Altman's left arm was down (not up and at chest or shoulder level) when he was shot and also that [Helgesen] shot Altman at an angle—not head-on as Helgesen testified at trial." Dkt. 196 at 6-7 (emphasis in original).

5

These alleged problems with Helgesen's testimony do not warrant a new trial. First, the fact that some witnesses testified in a manner that was arguably inconsistent with Helgesen's testimony is an insufficient basis for concluding that Helgesen's testimony was necessarily incredible or that the case should be re-tried. *Whitehead v. Bond*, 680 F.3d 919, 926 (7th Cir. 2012). The jury was free to disregard the testimony of those witnesses who said Helgesen fired three quick shots, in favor of Helgesen's testimony that he paused between the first and second shots. *See id*. Likewise, with regard to Bertaud and Pugliesi's inability to recall seeing Helgesen in the yard, both witnesses testified that they were focused solely on Altman. The jury could have accepted that as an explanation for the officers' failure to recall seeing Helgesen.

The physical evidence was not so overwhelming as to preclude the jury from rationally finding for Helgesen. For example, plaintiffs presented no evidence regarding how the casings would have ejected from Helgesen's firearm, or how the casings would have behaved once they hit the ground. While plaintiffs' counsel argued during closing that the cluster of casings proved that Helgesen fired three shots in quick succession from a single distance, such argument is not evidence and no jury would be compelled to draw the inference suggested by counsel.

Similarly, plaintiffs presented no evidence that a single bullet passed through Altman's left wrist and entered his abdomen at a similar angle. All plaintiffs' treating physician said was that (1) a bullet entered and exited Altman's forearm, (2) Altman had a gunshot wound to the right upper chest, and (3) Altman had a

6

gunshot wound to the abdomen. When specifically asked where the bullet went after passing through Altman's forearm, Dr. Zaret replied that it was "hard to say." While that bullet could have continued into Altman's abdomen, Dr. Zaret said the abdomen wound also could have been caused by an "independent injury." These equivocal statements do not mandate the conclusion that Altman was in a defensive position when he was shot.

The jury's verdict was not clearly contrary to the manifest weight of the evidence.

### C. Bifurcation

Plaintiffs argue that I erred in bifurcating liability and damages because defendants "did not meet their burden in establishing why bifurcation was necessary." Dkt. 196 at 8. Plaintiffs contend they were prejudiced by this error because (1) they were unnecessarily compelled to limit their number of damages witnesses, and (2) they had to pay for the video deposition of a damages expert who they were not able to use.

These arguments hold no weight in the current posture. A motion for a new trial will be granted following a claimed legal error (such as bifurcation) only if the error denied the moving party a fair trial. *Perry*, 794 F.2d at 285. In other words, the movant must show that the error actually prejudiced them at trial. Plaintiffs' arguments fail to do that, however, because they concern only the untried issue of damages. Meanwhile, plaintiffs say nothing of how, if at all, bifurcation prejudiced the trial that actually took place.

Furthermore, for the reasons given in my prior order, *see* Dkt. 170, I find defendants made a sufficient showing in support of bifurcation and that it was not legal error to grant their motion.

D.   **Motions in limine**

   1.   **Plaintiffs' No. 3 – Evidence of bad acts**

Plaintiffs argue that several rulings permitting defendants to present "bad acts" evidence were erroneous and that they deprived plaintiffs of a fair trial. Dkt. 196 at 11-12. The evidence at issue included evidence of: (1) "Altman's illegal drug and/or alcohol use prior and subsequent to the incidents complained of," (2) "Cheryl Palmer's statements on a 911 call regarding the amount of cocaine allegedly consumed by Altman that evening," and (3) "notations in medical records regarding Altman's blood alcohol content after the shooting." *Id*. at 11. Plaintiffs complain that this evidence told the jury about Altman's alcohol and cocaine consumption without any supporting medical evidence regarding how consuming that amount would have affected Altman's actions that night. *Id*.

Plaintiffs' objections are unfounded. The jury was presented with no evidence of either (1) Altman's drug or alcohol use before or after the day of the incident, or (2) Altman's blood alcohol content after the shooting. The jury never heard Cheryl Palmer's statement on the 911 call regarding the amount of cocaine Altman consumed that night. Thus, this evidence played no role at trial and cannot provide a basis to overturn the jury's verdict. While the jury did hear the Gurnee Police Dispatch say Altman "had done cocaine, possibly an 8 ball," that statement was not

8

admitted for the truth of the matter asserted, but—as the jury was instructed—for the limited purpose of demonstrating "what defendant Helgesen understood at the time." Expert testimony about the underlying chemistry would therefore not have been relevant.

To the extent plaintiffs complain that evidence of Altman's use of drugs and alcohol the day of the incident was problematic given the same lack of medical evidence, those arguments also fail. While Altman testified on direct that the day of the incident he had been drinking and using powder cocaine, he did not testify as to how much he consumed of either substance. On cross-examination, Altman was impeached with a statement from his response to defendants' interrogatories in which Altman admitted drinking six to eight ounces of rum and tequila. Gaffke testified that Altman had been drinking that day, but she did not say how much, and she further stated that her husband did not "seem drunk." The jury was not required to have medical testimony to use this evidence to understand how Altman behaved, whether he truly recalled the events he testified about, and what Helgesen encountered that night.[3]

Accordingly, these three complained-of rulings do not warrant a new trial.

**2. Plaintiffs' No. 7 – Witness disclosed after discovery**

Plaintiffs argue that it was prejudicial for defendants to use statements made by Altman to Dr. William Lee, because Lee was not disclosed to plaintiffs until after

---

[3] Plaintiffs never objected to the absence of medical testimony in connection with their testimony about Altman's intoxication, and they cite no authority now for the proposition that additional testimony is legally required whenever a witness describes drug or alcohol use. Moreover, they were free to argue to the jury that it should give no weight to the evidence. The admission of this testimony was not a miscarriage of justice.

9

the close of discovery. However, plaintiffs are mistaken—these statements were never used at trial. Lee was never called as a witness nor were statements made to Lee used to impeach Altman. Lee's late disclosure therefore caused no prejudice at trial.

### 3. Plaintiffs' No. 10 – Audio recordings

At trial, both parties played audio recordings of 911 calls and Gurnee Police Department radio traffic for the jury. Plaintiffs now argue that it was error to play the audio for the jury because the jury already had written transcripts of the same. Dkt. 196 at 13 ("it was improper nonetheless for these statements to be presented to the jury in any form beyond the written transcript"). Plaintiffs contend that the "only conceivable purpose in playing the audio recording of a 911 call . . . would be for the theatrical effect that hearing Altman and the officers' voices while [sic] would have on the jury." *Id*.

As defendants point out, it was actually the audio that constituted admitted evidence of what was said during those calls and transmissions. The transcripts, by contrast, were given to the jury merely as a means of helping them understand this evidence. The jury was specifically instructed on this point:

> You have heard a recording that was received in evidence. This recording is proper evidence and you may consider it just as any other evidence. You were given a transcript to use as a guide to help you follow as you listened to the recording. The transcript is not evidence of what was actually said or who said it. It is up to you to decide whether the transcript correctly reflects what was said and who said it. If you notice any difference between what you heard on the recording and what you read in the transcript, you must rely on what you heard, not what you read.

10

Thus, contrary to plaintiffs' position, without the audio there would have been no basis for publishing the written transcript to the jury.

### 4. Plaintiffs' No. 11 – Presenting the knife

Plaintiffs argue that it was "improper for Defendants' counsel to be permitted to present the knife recovered from the scene to the jury." Dkt. 196 at 13. At trial, defense counsel calmly presented the knife to the jury one time and only for a few seconds. While being presented, the knife was securely contained inside a cardboard box. Counsel was unable to hold the knife by its handle, or to point the tip at any of the jurors. Defense counsel did not dwell on displaying the weapon, nor did she say or do anything otherwise sensational while displaying it.

At the same time, the knife was unquestionably relevant to the question before the jury, because it was the very weapon Altman was holding when Helgesen shot him. The jury was entitled to see the knife in order to judge whether Helgesen's actions were reasonable in light of the totality of the circumstances. For that same reason, it was appropriate to present the actual knife to the jury, rather than just a photograph. Briefly and calmly displaying this extremely probative piece of evidence was not so prejudicial as to require a new trial.

### 5. Other damages evidence

In addition to the damages-related rulings discussed above concerning plaintiffs' motion in limine number 3, plaintiffs contest the damages-related rulings on plaintiffs' motion in limine number 14 and defendants' motion in limine number 23. These arguments fail, however, because the damages evidence at issue in these motions was never presented to the jury. As with other claimed errors concerning

damages-related evidence, the jury's verdict was not influenced in any way by these rulings, and therefore, they cannot justify a new trial.

## IV. Conclusion

Plaintiffs' motion for a new trial, Dkt. 196, is denied. Defendants' motion for judgment as a matter of law, Dkt. 189, is terminated as moot.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 10/6/14